Charles A. AUSTIN, III, et al., Plaintiffs,

v.

**BRADLEY, BARRY & TARLOW, P.C., Edward D. Tarlow and Richard P. Breed, III, Defendants.**

Civ. A. No. 85–4767–S.

United States District Court, D. Massachusetts.

April 30, 1993.

---

Barbara A. O'Donnell, Sherin & Lodgen, Boston, MA, for plaintiffs.

Erik Lund, Posternak, Blankstein & Lund, Boston, MA, for defendants.

## *MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

SKINNER, Senior District Judge.

This case and three related actions were brought by four investors in a fall 1982 yacht sale and management offering by Ocean Limited.[1] The defendants, the law firm Bradley, Barry & Tarlow, P.C. and two of its partners, Edward T. Tarlow and Richard P. Breed, III (collectively referred to as BB & T), served as legal counsel to Ocean and prepared a significant portion of the allegedly fraudulent offering memorandum. The crux of the plaintiffs' claims against BB & T is that the offering memorandum was misleading because it failed to disclose material information regarding Ocean's insolvency and inability to fulfill future obligations under the management plan. The defendants move for summary judgment, asserting that the plaintiffs are unable to establish a material element of their remaining claims [2]—that BB & T was under any duty to disclose.

---

1. The three related cases are (1) *Werner–Stewart, Inc. v. Ocean Limited*, C.A. No. 84–0653–S (D.Mass.), (2) *Austin v. Ocean Limited*, C.A. No. 84–0654–S (D.Mass.), and *McCurtain v. Ocean Limited*, C.A. No. 84–4146–S (D.Mass.).

2. In my June 17, 1992 order, I allowed in part BB & T's previous motion for summary judgment, which was based on alternative grounds. *Austin v. Bradley, Barry & Tarlow, P.C.*, No. 85–4767–S (D.Mass. June 17, 1992). The remaining claims are as follows: violation of section 10(b) and Rule 10b–5 (Count I), aiding and abetting violation of § 10(b) and Rule 10b–5 (Count II), common law fraud and deceit (Count VII), aiding and abetting fraud and deceit (Count VIII), negligence (Count IX), and negligent misrepresentation (Count X). The facts relevant to BB & T's present motion, viewed in the light most favorable to the plaintiffs, were fully discussed in my June 17, 1992 order and require no elaboration.

## DISCUSSION

Summary judgment is appropriate where the record reveals that, " 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *FDIC v. World Univ., Inc.,* 978 F.2d 10, 13 (1st Cir.1992) (quoting FED. R.CIV.P. 56(c)). Rule 56 mandates that judgment be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The facts must be viewed in the light most favorable to the party opposing summary judgment. *FDIC v. World Univ., Inc.,* 978 F.2d at 13.

### 1. *Primary Liability*

■ Our court of appeals has made eminently clear that "[e]ven if the information is material, there is no liability under Rule 10b–5 unless there was a duty to disclose it." *Backman v. Polaroid Corp.,* 910 F.2d 10, 13 (1st Cir.1990) (quoting *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 26 (1st Cir.1987)). The plaintiffs here do not contend that BB & T's duty to disclose arose from any prior affirmative misrepresentations, insider trading, or violation of any statutory or regulatory disclosure requirements. *See Roeder v. Alpha Indus., Inc.,* 814 F.2d at 27. Instead, the plaintiffs assert that the offering memorandum was misleading because BB & T remained silent, failing to disclose its knowledge of Ocean's insolvency. The plaintiffs further allege that BB & T was obliged to disclose this material information because, by preparing significant portions of the fall 1982 offering memorandum, BB & T assumed a duty to third party investors who BB & T knew would reasonably and detrimentally rely on the completeness and accuracy of BB & T's professional services. In support of the existence of such a duty, the plaintiffs rely primarily on state law. *See Camp v. Dema,* 948 F.2d 455, 461 (8th Cir.1991) (fiduciary duty and corresponding duty to disclose may be established by state or federal law).

Under Massachusetts law, "an attorney owes a duty to nonclients who the attorney knows will rely on the services rendered." *Robertson v. Gaston Snow & Ely Bartlett,* 404 Mass. 515, 536 N.E.2d 344, 350 (citing *Page v. Frazier,* 445 N.E.2d 148, 154 (Mass. 1983)), *cert. denied,* 493 U.S. 894, 110 S.Ct. 242, 107 L.Ed.2d 192 (1989). However, courts will not infer a duty to nonclients if to do so would impose "conflicting duties on attorneys." *Logotheti v. Gordon,* 414 Mass. 308, 607 N.E.2d 1015, 1018 (1993); *see also Robertson v. Gaston Snow & Ely Bartlett,* 536 N.E.2d at 350 (" '[W]here an attorney is also under an independent and potentially conflicting duty to a client,' we are less likely to impose a duty to nonclients.") (quoting *Page v. Frazier,* 445 N.E.2d at 153). The record here reveals that imposing a duty on BB & T to disclose Ocean's insolvency to nonclient investors like the plaintiffs would conflict directly with BB & T's concurrent obligation of confidentiality to its client. Accordingly, I decline to infer such a duty in this case.

The plaintiffs' reliance on this court's opinion in *Norman v. Brown, Todd & Heyburn,* 693 F.Supp. 1259, 1265 (D.Mass.1988) (Skinner, J.), as authority for the contrary conclusion is misplaced. First, *Norman* was decided without benefit of the Supreme Judicial Court's recent decision in *Logotheti* and, as a result, did not fully consider the potential for conflicting professional obligations. Second, the focus in *Norman* was on the existence of a duty of reasonable care owed by an attorney to nonclient investors in a negligence context. *Id.* The case did not address the existence of a fiduciary or other special relationship necessary to create a duty to disclose under federal securities law. *Cf. Agapitos v. PCM Invest. Co.,* 809 F.Supp. 939, 946 (M.D.Ga.1992) (duty of reasonable care arising under Georgia professional negligence law did not create a fiduciary relationship between parties actionable under federal securities law).

Similarly misplaced is the plaintiffs' reliance on *Ackerman v. Schwartz,* 947 F.2d 841 (7th Cir.1991) as authority for a duty to speak arising from federal common law. Unlike the present case, *Ackerman* involved an attorney who prepared an opinion letter containing affirmative misrepresentations. *Id.*

at 843. While the court observed that the attorney had no duty to "blow the whistle" on his clients, the attorney was still liable for "a material lie." *Id.* at 848. Accordingly, the Seventh Circuit reversed entry of summary judgment to the extent the attorney permitted the promoters to release his opinion letter to investors. *Id.* Simply stated, having elected to speak, the attorney in *Ackerman* was obliged to tell the truth. *See Id.*

In contrast, the plaintiffs here do not allege that BB & T made any prior affirmative misrepresentations or misleading disclosures giving rise to a comparable duty to speak. *See Backman v. Polaroid Corp.*, 910 F.2d at 16–17 (duty to disclose arises only to correct or update what would otherwise be a materially misleading prior statement by the defendant). The plaintiffs premise BB & T's duty to speak on the allegedly misleading nature of the offering memorandum, which they allege was misleading only because BB & T remained silent. Circular reasoning, however, is not a persuasive basis for abandoning the well-settled rule that "silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 1117, 63 L.Ed.2d 348 (1980).

In short, the plaintiffs are unable to establish an element essential to their federal securities law claims and BB & T is entitled to summary judgment on Count I of the complaint. Absent any "fiduciary or other similar relation of trust and confidence between [the parties]," *Id.* at 228, 100 S.Ct. at 1114, BB & T had no duty to disclose its knowledge of Ocean's insolvency to potential investors. *See Schatz v. Rosenberg*, 943 F.2d 485, 490–92 (4th Cir.1991) ("... unless a relationship of 'trust and confidence' exists between a lawyer and a third party, the federal securities laws do not impose on a lawyer a duty to disclose information to a third party."), *cert. denied*, — U.S. —, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992); *accord, Renovitch v. Kaufman*, 905 F.2d 1040, 1048 (7th Cir.1990) (absent a fiduciary relationship with third party investor, law firm

had no duty to disclose financial information about client to investor).

### 2. *Secondary Liability*

■ To establish liability as an aider and abettor of a violation of § 10(b) or Rule 10b–5, the plaintiffs must establish the following three elements:

1. the commission of a violation of § 10(b) or Rule 10b–5 by the primary party;

2. the defendant's general awareness that his role was part of an overall activity that is improper; and

3. knowing and substantial assistance of the primary violation by the defendant.

*Cleary v. Perfectune, Inc.*, 700 F.2d 774, 777 (1st Cir.1983). BB & T asserts that, as a matter of law, it cannot be held secondarily liable as an aider and abettor of securities law violations because, absent a duty to disclose, its silence cannot constitute "knowing and substantial assistance" of the primary violation. *See Kline v. First W. Gov't Sec.*, 794 F.Supp. 542, 554 (E.D.Pa.1992).

■ The defendants' argument is overstated. Several courts have held that inaction or silence may constitute knowing and substantial assistance of the primary violation where the "defendant recklessly violates an independent duty to act or manifests a conscious intention to further the principal violation." *See, e.g., Zoelsch v. Arthur Andersen & Co.*, 824 F.2d 27, 36 (D.C.Cir.1987) (citing *Cleary v. Perfectune, Inc.*, 700 F.2d at 778). Since I have already determined that BB & T was under no independent duty to act, that is, to speak, BB & T can only be liable as an aider and abettor if its silence was consciously intended to further the principal violation.[3]

■ In determining whether silence was accompanied by a conscious intent to assist the primary violation, courts query whether the "defendant has thrown in his lot with the primary violators." *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir.) (quoting *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir.1986)), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112

---

**3.** While our court of appeals has declined to expressly adopt the conscious intent standard, it

has implicitly recognized the doctrine's validity. *Cleary v. Perfectune, Inc.*, 700 F.2d at 778.

L.Ed.2d 312 (1990). Crucial to this determination is "whether the alleged aider-and-abettor benefitted from such silence." *See, e.g., First Interstate Bank v. Pring,* 969 F.2d 891, 899 (10th Cir.1992) (collecting cases). In making these determinations, courts have been " 'particularly exacting.' " *Smith v. American Nat'l Bank & Trust Co.,* 982 F.2d 936, 944 (6th Cir.1992) (quoting *Moore v. Fenex, Inc.,* 809 F.2d 297, 303 (6th Cir.), *cert. denied,* 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987)).

Viewed against these standards and in the light most amiable to the plaintiffs, the record here fails to support a finding that BB & T's silence was "consciously intended" to assist the primary violation. First, there is no allegation that BB & T benefitted from its silence. *Cf. First Interstate Bank v. Pring,* 969 F.2d at 900 (alleged aider and abettor's silence indicated conscious intent to aid the primary violation where aider and abettor had "substantial personal stake" in success of allegedly fraudulent bond issue). While presumably BB & T received a fee for its legal services, this economic motivation alone is too remote and minimal to demonstrate that BB & T's silence was " 'designed intentionally to aid the primary fraud.' " *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 207 (2d Cir.1989) (premiums received by insurance company insufficient to demonstrate conscious intent) (quoting *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983)); *see also DiLeo v. Ernst & Young,* 901 F.2d at 629 (accountant fees received over a two-year period found insufficient to demonstrate conscious intent on part of alleged aider and abettor). Second, the plaintiffs have failed to refute BB & T's assertion that its silence was motivated solely by its professional obligation of confidentiality. Under Rule 56, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

Accordingly, the defendants are entitled to summary judgment as to Count II of the complaint. *See Cleary v. Perfectune, Inc.,* 700 F.2d at 778–79 (affirming entry of summary judgment against plaintiffs who failed to introduce any evidence demonstrating that defendants' silence was consciously intended to further fraudulent scheme).

### 3. State Law Claims

In light of the foregoing finding that BB & T was under no duty to disclose Ocean's insolvency to the plaintiffs, BB & T is also entitled to summary judgment on the plaintiffs' common law negligence (Count IX) and fraud (Count VII) claims. Absent a duty to disclose, there can be no negligence or fraud arising from BB & T's silence. *Maruho Co. v. Miles, Inc.,* No. 92–10084–Z, 1993 WL 81453, at *4, 1993 U.S.Dist. LEXIS 3321, at *10 (D.Mass. Mar. 8, 1993) ("Negligence ... presumes a duty."); *Royal Business Group, Inc. v. Realist, Inc.,* 933 F.2d 1056, 1064 (1st Cir.1991) (under Massachusetts law, "there can be no actionable claim of fraud for failure to disclose in the absence of a duty to disclose").

Similarly, the plaintiffs' failure to demonstrate that BB & T's silence substantially assisted the primary violation mandates that judgment be entered in BB & T's favor on the plaintiffs' state law claim of aiding and abetting fraud (Count VIII). This is because under Massachusetts law liability for aiding and abetting a tort attaches where: (1) the defendant provides "substantial assistance or encouragement to the other party;" and (2) the defendant has "unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Payton v. Abbott Labs,* 512 F.Supp. 1031, 1036 (D.Mass.1981) (applying Massachusetts law).

Finally, with regard to the plaintiffs' claim of negligent misrepresentation (Count X), the plaintiffs have failed to demonstrate an element essential to their claim. Under Massachusetts law, a claim for negligent misrepresentation generally requires privity between the parties. *In re Bank of Boston Corp. Sec. Litig.,* 762 F.Supp. 1525, 1536 (D.Mass.1991). Absent privity, the plaintiffs must demonstrate that BB & T had actual knowledge of each plaintiffs' reliance. *Id.* (citing *Hurley v. FDIC,* 719 F.Supp. 27, 34 (D.Mass.1989)). The record here fails to support either requirement. Viewed most

favorably, the plaintiffs have alleged only that BB & T should have reasonably foreseen the plaintiffs' detrimental reliance on the allegedly incomplete offering memorandum. This allegation falls far short of demonstrating actual knowledge on BB & T's part.

## CONCLUSION

The defendants' motion for summary judgment on the remaining counts of the complaint is **allowed.** The clerk is directed to enter final judgment in favor of the defendants on all counts of the complaint, the defendants to recover their costs.